IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTWAUN W.                  *
                                   *
v.                              *      Civil Case No. GLR-17-3753
                                   *
COMMISSIONER, SOCIAL SECURITY[1]     *
                                   *
                               *************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions, [ECF Nos. 15, 16], and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have reviewed the filings, including a reply memorandum filed by Plaintiff, [ECF No. 20], and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("the SSA") if it is supported by substantial evidence, and if the SSA followed the law. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff filed his claim for Supplemental Security Income on October 15, 2012, alleging a disability onset date of September 24, 2012. (Tr. 248-53). His claim was denied initially and on reconsideration. (Tr. 146-49, 155-57). After one postponement to allow time to seek representation, Plaintiff had a hearing before an Administrative Law Judge ("ALJ") on June 21, 2016. (Tr. 47-120). Following the hearing, the ALJ issued a written opinion in which he determined that Plaintiff was disabled within the meaning of the Social Security Act during a

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

portion of the relevant time frame, but then experienced medical improvement. (Tr. 11-34). On October 24, 2017, the Appeals Council declined review, making the ALJ's decision the final, reviewable decision of the SSA. (Tr. 1-7). Plaintiff filed the instant suit seeking review of that decision on December 22, 2017. [ECF No. 1].

The ALJ found that Plaintiff was under a disability from his application date through June 30, 2014, and awarded benefits for that time frame. (Tr. 15-26). As to the period starting July 1, 2014, the ALJ found that Plaintiff had not engaged in substantial gainful activity. (Tr. 15). The ALJ further concluded that Plaintiff suffered from the same severe impairments he had suffered prior to that date, including "panhypopituitarism; attention deficit hyperactivity disorder (ADHD); learning disorder; depression; and, anxiety." (Tr. 15, 26). Despite the fact that Plaintiff continued to have the same severe impairments, the ALJ determined that, as a result of medical improvement as of July 1, 2014, Plaintiff retained the residual functional capacity ("RFC") after that date to:

> perform light work as defined in 20 CFR 416.967(b) with the following additional limitations. He can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can have no exposure to unprotected heights and moving mechanical parts. He can frequently, bilaterally use both hand and foot controls. He can have frequent interaction with supervisors and coworkers and occasional interaction with the public. He is able to understand, remember, and carry out simple routine instructions or tasks, or detailed but uninvolved instructions or tasks, free of fast-paced or team-dependent production requirements, involving simple work-related decisions and occasional, if any, work place changes. He would be off task a maximum of five percent of the workday in addition to normal workday breaks (fifteen minutes in the morning, thirty minutes at lunch, and fifteen minutes in the afternoon), provided that this time off task would not be in one continuous block but would be spread out over the course of the workday averaging three minutes per hour.

(Tr. 28). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform several jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 32-34).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all relevant steps of the sequential evaluation, as they pertain to a finding involving medical improvement. The ALJ ruled in Plaintiff's favor at step one and determined that, despite some part-time employment, he had not engaged in substantial gainful activity. (Tr. 15); *see* 20 C.F.R. § 416.920(a)(4)(i).

At the next step, the ALJ determined that medical improvement had occurred since Plaintiff's period of disability. (Tr. 27); 20 C.F.R. § 416.994(b)(5)(ii). Specifically, the ALJ cited Plaintiff's bone age evaluation on June 30, 3014, which reflected "significant bone growth over the past two years based on comparison to a prior study."[2] (Tr. 27). The ALJ noted that the 2015 and 2016 physical examinations in the record "were almost wholly unremarkable." *Id.* As for Plaintiff's mental impairments, the ALJ noted that after 2013, "his treatment notes indicate that he denied depressed mood or suicidal ideations, restarted his Concerta, and was not seeing a

---

[2] In contrast, during the period in which the ALJ found disability, the ALJ noted that "the claimant's bone age was significantly lower than his chronological age," and his height and weight were "more consistent with someone six years younger." (Tr. 21).

3

psychiatrist . . . . No specific mental functioning complaints are reflected in his records after 2013." *Id.*

The ALJ also found that the medical improvement had affected Plaintiff's ability to work "because there has been an increase in the claimant's residual functional capacity." *Id.* Specifically, the ALJ found that the improvements both in Plaintiff's physical development and bone age and the reduced concerns and treatment for his mental health symptoms "reduced the amount of time he would be off task." *Id.* The ALJ relied, in part, on Plaintiff's testimony that he would have been able to work full-time at Giant had a position been available, and that he had applied for full-time fast-food jobs. *Id.*

Next, the ALJ considered the severity of the impairments that Plaintiff claimed prevented him from working, and found each impairment to be severe. (Tr. 15-17, 26); *see* 20 C.F.R. § 416.920(a)(4)(ii). The ALJ further determined that Plaintiff's severe impairments did not meet, or medically equal, the criteria of any listings. (Tr. 17-18, 26-27). Without specifically identifying any particular listing, the ALJ applied the special technique for the evaluation of mental disorders, and evaluated the four functional areas relevant to the mental health listings which constitute the "paragraph B" criteria. (Tr. 17-18); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (2016). The ALJ concluded that Plaintiff had mild restriction in his activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Tr. 17-18). The ALJ also found no episodes of decompensation of an extended duration. (Tr. 18). The ALJ further found that Plaintiff did not meet the "paragraph C" criteria which are included under certain listings. (Tr. 18), *see, e.g.*, 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.04 (2016). The ALJ supported those assessments with citations to the evidence of record. (Tr. 17-18). Under the mental health listings, a claimant would generally need to meet

the paragraph B criteria by showing two areas of marked difficulty, or one area of marked difficulty and repeated episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (2016). Under certain listings, the listing can be met by satisfying the paragraph C criteria, rather than the paragraph B criteria. *Id.* Accordingly, the ALJ did not err by concluding that the mental health listings were not met, because Plaintiff satisfied neither the paragraph B nor paragraph C criteria.

In considering Plaintiff's RFC, the ALJ summarized his subjective complaints from his testimony at his hearing, along with the testimony provided by his family members. (Tr. 22-23, 29). The ALJ then engaged in a detailed and extensive review of Plaintiff's daily activities and medical records, beginning July 1, 2014. (Tr. 29-32). The ALJ cited Plaintiff's testimony that he can lift 50 pounds, complete chores at home, cook small meals for his brother, do his own laundry, and work at Giant cutting and organizing fruit and maintaining the salad bar. (Tr. 29). Plaintiff also testified that his only difficulty following instructions occurred when he was not taking his prescribed ADHD medications. (Tr. 30).

The ALJ also assessed and made assignments of weight to the medical opinions in the record. (Tr. 30). In particular, the ALJ noted that there are no medical source statements indicating that the claimant was disabled after June 30, 2014, or suggesting any restrictions to his functional capacity during that time frame. (Tr. 30). The ALJ also thoroughly discussed his assessment of Plaintiff's subjective complaints, and identified the evidence in the record undermining those assertions. (Tr. 30-31). Finally, the ALJ explained his finding regarding Plaintiff's "time off task," tying the conclusion to specific medical evidence after July 1, 2014. (Tr. 31).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the detailed and ample evidence outlined above, I find the ALJ's RFC determination was supported by substantial evidence.

Next, the ALJ determined that Plaintiff had no past relevant work. (Tr. 32). Accordingly, the ALJ proceeded to step five and considered the impact of Plaintiff's age, level of education, and RFC on his ability to adjust to new work. (Tr. 32-34). In doing so, the ALJ cited the VE's testimony that a person with Plaintiff's RFC would be capable of performing certain jobs. (Tr. 32-33). Based on the VE's testimony, then, the ALJ concluded that Plaintiff was capable, with his impairments after July 1, 2014, of successfully adjusting to jobs that exist in significant numbers in the national economy. (Tr. 32-33). The ALJ's reliance on the VE's testimony constitutes substantial evidence supporting the ultimate conclusion that Plaintiff was not disabled.

Finally, in an attachment to his Complaint, Plaintiff submitted a medical record from August 16, 2017, that he also provided the Appeals Council. [ECF No. 1-2], (Tr. 2). The record reflects that the Appeals Council received and considered the paperwork. "[T]he regulatory scheme does not require the Appeals Council to do anything more than . . . 'consider new and material evidence . . . in [determining] whether to grant review.'" *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) (en banc)). The Appeals Council is not required to take any specific action in

response to new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.* Here, however, the Appeals Council explained that the 2017 records postdated the ALJ's October 3, 2016, decision, and would therefore be relevant only to a new application for benefits. (Tr. 2). I note also that the records in question are generally consistent with the records predating the ALJ's decision, in that they show that Plaintiff's psychiatric conditions can be controlled with medication if he is compliant with taking the prescribed doses. [ECF No. 1-2] In the absence of evidence that the new records reasonably might alter the ALJ's analysis, the records cannot constitute "new and material evidence." *See Borders v. Heckler,* 777 F.2d 954, 956 (4th Cir. 1985) (requiring a showing that the Commissioner's decision "might reasonably have been different").

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Plaintiff's Motion for Summary Judgment, [ECF No. 15], GRANT Defendant's Motion for Summary Judgment, [ECF No. 16]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: October 22, 2018                                         /s/
                                                                         Stephanie A. Gallagher
                                                                         United States Magistrate Judge